1998 ME 31

**Amile MOULTON**

v.

**Gene MOULTON, et al.**

Supreme Judicial Court of Maine.

Argued Dec. 1, 1997.
Decided Feb. 13, 1998.

John G. Connor (orally), Portland, for plaintiff.

Timothy E. Robbins (orally), Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

WATHEN, Chief Justice.

[¶ 1] Defendants Gene and Thomas Moulton,[1] the son and nephew respectively of plaintiff Amile Moulton, appeal from the judgments entered in favor of plaintiff Amile Moulton in the Superior Court (Cumberland County, *Mills, J.*). The judgments were based on a jury verdict finding that defendants breached their fiduciary duty, intentionally inflicted emotional distress, and trespassed. Defendants also appeal from the court's subsequent judgments reforming their warranty deed and imposing a constructive trust on the real estate in question. They argue *inter alia* that there was no evidence to support the jury verdict. They contend that they were not in a confidential relationship with Amile and, therefore, they were not subject to any fiduciary duty. We agree and vacate the judgments.

[¶ 2] The facts may be summarized as follows: The case involves a dispute over the family home. Amile is more than eighty years old and has lived in the family home for over fifty years. He and his wife, Margaret, raised their two children, twins named John and Gene, in the house and Amile currently lives there alone. In 1982 as Margaret's health deteriorated, they decided to move her into a nearby nursing home. Amile testified that before Margaret entered the nursing home, they decided to convey their home to their adult sons "so that the nursing home wouldn't get it." This decision was made in spite of the fact that Amile's relationship with his son Gene was acrimonious. At the time of the transfer, the sons were not consulted, Amile was represented by counsel, and no money changed hands. Amile testified that the deed was a gift from him and his wife to his sons. He testified that even though he had conveyed his home outright, it was his understanding that he could live there for as long as he wanted. There was no evidence of any basis for his understanding at the time of the transfer. Both defendants acknowledged that they understood that the purpose of the transfer was to keep the State from taking the house. Margaret died in 1984.

[¶ 3] Although the relationship between the parties has been difficult, Amile has lived in the house ever since title was transferred in 1982. John Moulton died in 1993 and his interest in the house passed to his wife, Glenna Moulton. Later, she conveyed her interest to her son, Thomas Moulton. In 1995, a dispute developed concerning the payment of taxes and insurance premiums. According to defendant Gene Moulton, his brother John and Amile had a verbal agreement that plaintiff could live in the house as long as he was able to take care of himself and pay the taxes and insurance. Although it is unclear whether Amile ever actually refused to make those payments, defendants made written demands on him, first for taxes and then for rent. One month later, defendants sent him a notice of eviction.

[¶ 4] Amile responded with a nineteen count complaint, and eventually three issues were submitted to the jury: whether defendants abused a confidential relationship and breached their fiduciary duties, whether they intentionally inflicted emotional distress, and whether Thomas trespassed on Amile's land. The jury found for plaintiff on all issues and awarded a total of $84,000 in compensatory damages and $10,000 in punitive damages. Relying on the jury's findings, the court ordered reformation of the deed to grant Amile a life estate and imposed a constructive trust. Defendants' motion for judgment as a matter of law on the issues submitted to the jury was denied. This appeal followed.

I.

[¶ 5] At trial, Amile's principal theory of recovery was his claim that defendants abused the confidential relationship that existed between them and breached their fiduciary duties. As we recently noted in *Estate of Mary Campbell*, "[t]he salient elements of a confidential relationship are the actual placing of trust and confidence in fact by one party in another and a great disparity of position and influence between the parties to the relation." *Estate of Mary Campbell*, 1997 ME 212, ¶ 8, 704 A.2d 329. The fact

---

1. Glenna Moulton, mother of Thomas Moulton, was a defendant below. The jury, however, found in her favor on all counts. Plaintiff does not challenge those verdicts.

that the parties are family members will not, without more, establish a confidential relationship. *Id.* Thus, in order to recover, Amile was required to prove by a preponderance of evidence that he placed his trust in his sons and that they were capable of exercising influence over him at the time he signed the deed to his home.

[¶ 6] Reviewing the record, we find insufficient evidence to support the verdict. Amile testified that he "never trusted [his son] Gene," and specifically did not trust Gene at the time he transferred his home. He confirmed that he never discussed his plans with Gene before the deed was signed. Although Amile's health has deteriorated over the years, there was no evidence that his health rendered him vulnerable or placed him in an inferior position to his sons in 1982. Simply put, the record reveals that Amile, represented by counsel and in the complete absence of any influence of his sons, conveyed his home to them in an effort to protect it from serving as a source of payment for medical bills. He now invokes the protection of the courts to avoid the legal consequences of that transfer. In the absence of any evidence of a confidential relationship, a court is without authority to shield him from the legal effect of his own deed.

[¶ 7] Because there is insufficient evidence to support the finding that defendants abused a confidential relationship and breached a fiduciary duty, we must vacate the damage award on all counts. Even though Amile's claims of intentional infliction of emotional distress and trespass could independently support a damage award, the jury's erroneous finding taints the entire award. The erroneous conclusion that there was a confidential relationship could have influenced the jury's consideration of defendants' conduct. The trespass action was secondary to all other claims and could not independently support damages in the amount awarded.

## II.

[¶ 8] Following the jury verdict, the court imposed a constructive trust on the property. It is correct that an abuse of a confidential relationship resulting in a benefit to the wrongdoer may give rise to a constructive trust so that "equity may lay its hands on the very thing and wrest it from the possession of the wrongdoer." *Ruebsamen v. Maddocks,* 340 A.2d 31, 37–38 (Me.1975). Because we have concluded that there was no confidential relationship between the parties, that basis for imposing a constructive trust disappears.

[¶ 9] In the absence of fraud or any undue influence, the only basis for the court's order reforming the deed to impose a life estate is mutual mistake of fact. *Bryan v. Breyer,* 665 A.2d 1020, 1022 (Me.1995). A mutual mistake of fact must be shown by clear and convincing evidence. *Lietz v. Berry,* 543 A.2d 367 (Me.1988). "A mistake of fact is said to exist when some fact which really exists is unknown, or some nonexistent fact is supposed to exist." *Bryan v. Breyer,* 665 A.2d at 1022.

[¶ 10] There is no evidence in the record before us that the parties suffered from any mutual mistake of fact. All parties understood the motive for the transfer, but beyond that there was no mutual understanding other than that which is reflected in the deed. If Amile was mistaken, his mistake was one of law, i.e., he misunderstood the legal effect of an outright and unconditional transfer of his home.

[¶ 11] Finally, we reject Amile's argument that gratuitous conveyances may be set aside on the basis of a unilateral mistake of fact or law, even in the absence of any inequitable conduct on the part of the grantee. *Brinker v. Wobaco Trust Ltd.,* 610 S.W.2d 160 (Tex.Civ.App.1980); *Tyler v. Larson,* 106 Cal.App.2d 317, 235 P.2d 39, 41 (1951); *Westcott v. Westcott,* 259 N.W.2d 545, 548 (Iowa Ct.App.1977). We adopt the reasoning of the Supreme Court of Virginia and conclude that a deed of gift may not be reformed due to the grantor's unilateral mistake in understanding the legal effect of the deed unless the grantor can demonstrate inequitable conduct on the part of the grantee. *Hill v. Brooks,* 253 Va. 168, 482 S.E.2d 816 (1997). *See also Poling v. Northup,* 652 A.2d 1114, 1116 (Me.1995), *Lietz v. Berry,* 543 A.2d 367, 368 (Me.1988) (ruling that when

only one party misunderstands the effect of a deed, reformation is not available); *cf. Weeks v. Weeks,* 650 A.2d 945, 947 (Me.1994); *Lalime v. Lalime,* 629 A.2d 59, 60–61 (Me.1993) (grantor's motive for transferring property to wife in joint tenancy does not overcome the presumption of a gift to the martial estate created by the deed). We decline to subject every deed of gift to a claim that the grantor misunderstood the significance of a fee simple conveyance by warranty deed. On this record, the court erred in reforming plaintiff's deed to reserve a life estate.

The entry is:

Judgment vacated. Remanded to the Superior Court for entry of judgment in favor of defendants with respect to claims for breach of fiduciary duty, deed reformation, and constructive trust. The claims for intentional infliction of emotional distress and trespass are remanded for further proceedings consistent with the opinion herein. ·

