STATE OF MAINE
YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-05-020

~~'4-YOR- 17 c5~~

OAK HILL REALTY TRUST,

        Plaintiff

v.

DONALD E. REED,

        Defendant

v.

ROBERT NADEAU,

        Third-Party Defendant

**ORDER**

This case comes before the Court on Defendants Donald and Lorraine Reed's Motion to Dismiss and Motion to Strike Language from Plaintiff Oak Reality Trust's Complaint; and Third Party Defendant Robert Nadeau's Motion to Dismiss the Third Party Complaint.

## FACTUAL BACKGROUND

On August 10, 2004, the Reeds entered into a purchase and sale agreement with Oak Hill Reality Trust (Oak Hill), represented by Attorney Nadeau, for the purchase of Lot 13 on the Well's Assessor's Map. The agreement includes a promise by the seller to complete certain improvements to the structure of a house. The agreement also indicates that the lot is 2.5 +/- acres. It refers to the warranty deed for a complete legal description of the lot. However, the warranty deed indicates that the size of the lot is 10+/- acres. At the closing, Attorney Nadeau issued a title insurance policy of $150,000 on behalf of Lawyers' Title

Insurance Company for the real estate conveyed by the warranty deed.[1] During that time, the complaint alleges that the Reeds were aware of Oak Hill's plans to subdivide and sell the remaining 7.5+/- acres. After the closing and the recording of the deed, it came to Attorney Nadeau's attention that a mistake had been made in the warranty deed regarding the size of the lot. To remedy the mistake, Attorney Nadeau unilaterally recorded a corrective warranty deed representing the size of the lot to be exactly 2.33 acres.[2] He also corrected the insurance policy.

On February 25, 2005, Oak Hill filed a four-count Complaint seeking injunctive relief (Count I), declaratory judgment (Count II), slander of title (Count III), and interference with economic relations (Count IV). The Reeds have moved for dismissal of the Complaint in its entirety. At the same time, they moved to strike paragraphs 14-18 from Oak Hill's Complaint.

On March 8, 2005, the Reeds filed a Third Party Complaint against Attorney Nadeau, which they supplemented with an Amended Third Party Complaint on March 29, 2005. The Amended Third Party Complaint seeks relief for negligence, slander of title and tortious interference with a prospective economic advantage. Attorney Nadeau has moved for dismissal of the Reeds Third Party Complaint in its entirety.

## I.     THE REED'S MOTION TO DISMISS

The Reeds argue that Oak Hill's complaint should be dismissed on two grounds. First, the Declaratory Judgment Act is not the appropriate remedy for

---

[1] At the closing, the Reeds, while represented by counsel up until that point, asked their attorney not to accompany them to the closing to avoid additional legal fees.

[2] The corrective deed was not delivered to the Reeds.

reformation of a deed. Second, pursuant to M.R. Civ. P. 19, Oak Hill failed to join persons needed for just adjudication; i.e., the Trustees of Oak Hill Realty Trust.

At oral argument, Oak Hill conceded that instead of seeking a declaratory judgment, the appropriate action is reformation of the deed. Accordingly, Oak Hill petitioned the Court to amend its Complaint to substitute a claim for reformation of the deed for the declaratory judgment action, and to join the Trustees of the Oak Hill Realty Trust pursuant to M.R. Civ. P. 19.

The Court grants Oak Hill's motion to amend its Complaint pursuant to M.R. Civ. P. 15(a). Unless Oak Hill amends the Complaint within 30 days of this order, the Complaint will be dismissed.

## II.    THE REEDS' MOTION TO STRIKE BASED ON M.R. Evid. 408(a).

The Reeds motion to strike is based on paragraphs in the complaint purporting to disclose an offer to compromise. Pursuant to M.R. Civ. P. 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Notably, this rule does not state that evidence that could be deemed inadmissible at trial may be stricken at this early stage of litigation.

Maine Rule of Evidence 408(a) "provides that evidence associated with the compromise of a claim is not admissible to prove liability. . . . This rule of exclusion pertains to proof of liability, or the validity or amount of a claim, but does not exclude evidence offered for other purposes." *Union River Associates v. Budman*, 2004 ME 48, ¶ 18, 850 A.2d 334, 340.

The Reeds argue that paragraphs 14-18 reveal information regarding offers

to compromise and therefore should be stricken from the record. In reviewing these paragraphs, it is unclear whether the statements are offers to compromise this claim. However, the purpose of Rule 408 is to keep certain prejudicial evidence from the jury/fact-finder. If it becomes clear that the evidence Oak Hill seeks to introduce at trial is an offer to compromise, the Reeds may appropriately file a motion in limine.

The Reed's Motion to Strike is DENIED.

## III. ATTORNEY NADEAU'S MOTION TO DISMISS

Attorney Nadeau argues that the claim for negligence should be dismissed because as counsel for Oak Hill, he did not owe a duty to the Reeds in the real estate transaction. Attorney Nadeau also argues that the claim for tortious interference with a prospective economic advantage should be dismissed because he was merely an agent acting at the direction of his disclosed principle, Lawyers' Title Insurance Company.

A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint. *Plimpton v. Gerrard*, 668 A.2d 882, 885 (Me. 1995). Dismissal for failure to state a claim is appropriate only where it appears beyond doubt that the plaintiff is entitled to no relief under any set of facts which he might prove in support of his claim. *Dutil v. Burns*, 674 A.2d 910, 911 (Me. 1996).

### 1. Negligence

For a cause of action for negligence to withstand a motion to dismiss, the plaintiff must establish that the defendant owed a legal duty to the plaintiff, *Rowe v. Bennett*, 514 A.2d 802, 804 (Me. 1986), and that the breach of that duty resulted in harm. Whether a party owes a duty of care is a question of law to be determined by the Court. *Fish v. Paul*, 574 A.2d 1365, 1366 (Me. 1990). Although

the Law Court has recognized that an attorney may owe a duty to a non-client, the facts alleged in the complaint must give rise to a duty or an attorney-client relationship. *Gerber v. Peters*, 584 A.2d 605, 607 (Me. 1990).

In this case, the Reeds contend that because Attorney Nadeau drafted the warranty deed involved in purchasing real estate from Oak Hill, he provided legal representation to the Reeds in the transaction. The fact that pro se clients engage in negotiations with an opposing attorney does not alone establish a duty or an attorney-client relationship with the opposing attorney. If the Reeds had alleged that Attorney Nadeau made representations to the Reeds to the effect that he was representing them in a legal capacity, a duty may very well exist. The Reeds are not alleging that he did so in this case.[3]

Accordingly, Attorney Nadeau's motion to dismiss the negligence claim is GRANTED.

## 2. Slander of Title

The tort of slander of title protects a person's property interest against words or conduct of another that bring the validity of that interest into question. *Colquhoun v. Webber*, 684 A.2d 405, 409 (Me. 1996). The elements of slander of title are "(1) a publication of a slanderous statement disparaging [a] claimant's title; (2) that was false; (3) made with malice or with reckless disregard of its falsity; and (4) that caused actual or special damages." *Id*.

---

[3] The Reeds also appear to argue that the harm they have suffered is the onset of this lawsuit by Attorney Nadeau. This is not the kind of harm envisioned by a negligence action. In regards to what Attorney Nadeau argues is a scrivener's mistake, not only have the Reeds not suffered harm at the hands of attorney Nadeau, they have benefited by becoming putative owners of the property.

In the present case, the Reeds' Complaint alleges that by recording the corrective warranty deed, which contained a false legal description of the property sold, Attorney Nadeau maliciously placed on cloud on the Reeds' title. Although the Complaint is silent on damages, the Court can infer that because of the cloud on their title, the Reeds are unable to sell the Property at full market value. Accordingly, the Reeds have asserted the bare minimum to establish a claim of slander of title.

The motion to dismiss the claim of slander of title is DENIED.

### 3. Tortious Interference with a Prospective Economic Advantage

Tortious interference with a prospective economic advantage requires a plaintiff to prove: (1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages. *Rutland v. Mullen*, 2002 ME 98, ¶ 13, 798 A.2d 1104, 1110.

The Reeds assert they had a contractual relationship with Lawyers' Title Insurance Company to purchase title insurance. They further assert that Attorney Nadeau, as an agent for the company, intended to "bully and intimidate" them by preparing the endorsement to the original title insurance policy, and that the interference with the policy caused the title insurer to refuse coverage.[4]

Again, the Reeds have asserted the bare minimum to establish a claim for tortious interference with a prospective economic advantage. The motion to dismiss this claim is DENIED.

---

[4] However, the Reeds state later in the Complaint that Lawyers' Title Insurance Company is still their insurance carrier.

RE-05-020

DATE: 10/7/25

<u>C. (signature)</u>
Justice, Superior Court

Patrick Bedard, Esq. — PL
James L. Audiffred, Esq. — DEFS. DONALD E. REED & LORRAINE C. REED
Robert M. A. Nadeau, Esq. — THIRD-PARTY DEFENDANTS ROBERT M. A. NADEAU & ASSOCIATES &
                                                    ROBERT M. A. NADEAU

STATE OF MAINE                                        SUPERIOR COURT
                                                        CIVIL ACTION
YORK, ss.                                            DOCKET NO. RE-05-020

OAK HILL REALTY TRUST,

             Plaintiff

      v.                                                 ORDER

DONALD E. REED, et al.,

             Defendants

      This case comes before the Court on cross Motions for Summary Judgment.

Following hearing, the Plaintiff's Motion for Summary Judgment is Granted and

Defendants' Motion for Summary Judgment is Denied.

## UNDISPUTED FACTS

      On August 10, 2004, Donald and Lorraine Reed (the "Reeds") entered into a

purchase and sale agreement with Oak Hill Reality Trust ("Oak Hill") for the purchase

of Lot 13 on the Well's Assessor's Map. The purchase and sale agreement indicates that

the purchased lot is 2.5 +/- acres.[1] It refers to a warranty deed for a complete legal

description of the lot. However, the warranty deed indicates that the size of the lot is

10+/- acres.

      At the closing, the Seller's attorney issued a title insurance policy of $150,000 on

behalf of Lawyers' Title Insurance Company for the real estate conveyed by the

warranty deed.[2] The complaint alleges that the Reeds were aware of Oak Hill's plans

to subdivide and sell the remaining 7.5+/- acres. After the closing and the recording of

---

[1]      The purchase and sale agreement also includes a promise by the seller to complete certain
improvements to the structure of a house.

[2]      At the closing, the Reeds, while represented by counsel up until that point, asked their attorney
not to accompany them to the closing to avoid additional legal fees.

the deed, Oak Hill's attorney realized that a mistake had been made in the warranty deed regarding the size of the lot. To remedy the mistake, Oak Hill's attorney unilaterally recorded a corrective warranty deed representing the size of the lot to be exactly 2.33 acres.[3]

At hearing, Mr. Reed admitted that the negotiations leading up to the purchase of the property from Oak Hill concerned the purchase of 2.5 +/- acres. (SMF ¶ 12). Mr. Reed told friends he was going to receive 2.5+/- acres but he received 10 acres instead. (SMF ¶ 34). Mr. Reed also admits that Oak Hill's attorney made an error in the preparation of the deed. (SMF ¶ 36).

## DISCUSSION

Oak Hill argues that because the deed contains a mutual mistake in terms of the number of acres to be conveyed to Mr. Reed, it should be reformed. In response, the Reeds argue that regardless of whether there was a mistake made in the drafting of the deed, it was delivered to and accepted by them. Therefore, they argue that reformation is inappropriate.

Reformation is an equitable remedy by which an instrument may be corrected when a mutual mistake is discovered so as to reflect the real intention of the parties. *Jordan v. Shea*, 2002 ME 36, ¶ 18, 791 A.2d 116, 122. A mistake of fact is said to exist when some fact that really exists is unknown, or some nonexistent fact is believed to exist. *Moulton v. Moulton*, 1998 ME 31, ¶ 10; 707 A.2d 74, 76. A mutual mistake of fact must be shown by clear and convincing evidence. *Id.*

In *Moulton*, the Plaintiff conveyed property to his sons "so that the nursing home wouldn't get it." Although the Plaintiff understood that he would retain a life estate, there was no evidence that the sons either understood or agreed to this arrangement.

---

[3] The corrective deed was not delivered to the Reeds.

The transfer was unconditional. The Law Court held that while all parties understood the motive for the transfer, there was no mutual understanding concerning the details of the transfer; the fact that Plaintiff intended to retain a life estate. The mistake was one of law; the Plaintiff misunderstood the legal effect of his unconditional transfer. *Id.* In contrast, here, all parties understood that the conveyance of land from Oak Hill to the Reeds involved between 2 and 3 acres.[4] The purchase and sale agreement states as much, and more importantly, Mr. Reed admits as much. In light of this evidence, the Court finds that both parties negotiated and agreed to a conveyance of between 2 and 3 acres. As such, the deed contains a mutual mistake. It conveys 10 acres instead of the bargained for 2 to 3 acres. To allow the Reeds to retain 10 acres due to an error in the drafting of the deed would be an injustice.

The entry is as follows:

> Oak Hill Realty Trust's Motion for Summary Judgment is GRANTED. Defendants' Motion for Summary Judgment is DENIED. The warranty deed contains a mutual mistake and must be reformed to reflect the intention of the parties at the time of the transaction to convey 2.5 +/- acres of land to the Reeds.
>
> Count II is still pending.

DATE: _____

Patrick Bedard, Esq. - PLS
James L. Audiffred, Esq. - DEFS

G. Arthur Brennan
Justice, Superior Court

---

[4] Mr. Reed argues that this case is controlled by *Bryan v. Breyer*, 665 A.2d 1020 (Me. 1995). However, the *Bryan* case is distinguishable. In *Bryan*, the parties entered into a purchase and sale agreement for real estate under the mutually mistaken belief that a certain lot was to be included in the sale. Between the time the purchase and sale agreement was executed and the closing took place, the parties were informed that the particular lot was not included in the deed. Nevertheless, the parties went forward with the closing. The Law Court held that because the parties were aware of the omitted lot at the time of closing but proceeded to close anyway, the deed could not be reformed on the theory of mutual mistake. In the case at bar, the parties were operating under a mutual mistake of fact at the time of the closing. Throughout the entire negotiations, including the closing, both parties believed the conveyance involved 2.5+/- acres. This case presents the factual setting to which the *Bryan* court indicated the remedy of reformation may properly be applied.