STATE OF MAINE
AROOSTOOK, SS.

SUPERIOR COURT
Caribou
Docket No. CARSC-CV-2020-060

Betty Gardner )
and )
Ruth Sheldon, )
          Plaintiffs, )
)
      v. )
)
Roy M. Gardner, Jr. )
and )
Molly Pangburn )
)
         Defendants )

**JUDGMENT**

This matter came before the court for bench trial on January 18 and 19, 2022. Plaintiffs were present and represented by William Devoe, Esq. and Kady Huff, Esq. Defendants were present and represented by William Smith, Esq. The court received the testimony of all of the parties and Roy E. Gardner. After the close of the evidence, both sides were permitted additional time to submit written closing arguments. Plaintiffs provided their submission on February 8, 2022. Defendants provided their submission on February 22, 2022. Plaintiffs submitted a reply to Defendants' submission on February 25, 2022. After due consideration to the evidence presented, the Court finds and orders as follows:

At the heart of the dispute between these parties is the family sporting camp land and business. The parties are all siblings and the children of Roy Gardner, Sr., and the

1

late Maude Gardner[1]. Their parents owned and operated successful sporting camps in the Town of Allagash. As the parties' parents were getting older, they began transferring interests in their real estate to the parties. Although the testimony failed to present a complete history of the chain of title for each of the parcels at issue, the evidence made clear that the parties transferred property interests back and forth between one another from time to time, depending on the particular life circumstances of the title holder. For instances, the property interest would be transferred out of the name of one of the parties if that party was experiencing a divorce. The evidence made clear that the intent of Roy and Maude, as well as the parties, was that the family property would be held for the benefit of all four children equally.

Beginning in 2011, Betty, Ruth and Molly began serving significant roles in the operation of the sporting camp business due to Maude's declining health. They functioned on somewhat of a rotating scheduled where they would come to the property for extend periods of time to help manage the business and care for its clientele. This continued through the passing of Maude on March 5, 2015.

In 2015, the parties engaged in formal discussions about the formation of a trust to hold and manage the family real estate moving forward. The Gardner Family Trust instrument represents the ultimate agreement reached by three of the siblings regarding the management of the property (hereinafter "the Trust"). *See, Plaintiffs' Ex. 5.* The Trust was established and the interest in the real estate as described in the trial exhibits was conveyed to the Trust. *See, Plaintiffs' Ex. 6.* Although some of the property involved in

---

[1] The Court will refer to the parties by their first names for clarity and intends no disrespect.

2

the sporting camp business is described in the instruments conveying real estate interests to the Trust that is at issue in this case, the Trust holds no title interest in or to the "lodge property" that was utilized in the operation of the sporting camps. The parties agree that any interest in the lodge property is "beyond the reach of the court in relation to the trust termination issues." *Plaintiffs' Closing Argument at FN 4.*

When assets were transferred to the Trust, Roy and Molly could convey no greater estate than they held, being a remainder interest in the real estate. *See, Defendants' Ex. 1, 2, and 3.* The life estate in the real estate remained with Roy, Sr. after the passing of Maude. "The relation of a life tenant to the remainderman is usually termed that of a trustee or quasi trustee. *Hardy v. Mayhew* (Cal.), 158 Cal. 95, 110 P. 113; *Smith v. Cross*, 125 Tenn. 159, 140 S.W. 1060. He differs, however, from the trustee of a pure trust in that he may use the property for his exclusive benefit and take all of the income and profits. *Cook v. Collier* (Tenn.), 62 S.W. 658; *Gibson v. Brown* (Ind.), 62 Ind. App. 460, 110 N.E. 716." *Nelson v. Meade*, 129 Me. 61, 65, 149 A. 626, 628-629. From the inception of the Trust through the date of the trial, the Trust had no present possessory interest in any of the property that is in dispute or any right to income or profits, as it was all subject to a life estate in Roy Gardner, Sr.

It is clear from the language of the trust instrument that Betty Gardner is not included as a beneficiary, grantor, or trustee. *See, Plaintiffs' Ex. 5.* This is due to the desire, of at least Roy and Molly, to not have Betty involved in any management activities. However, Court finds by clear and convincing evidence that Ruth was to hold and

3

manage an additional ¼ interest on behalf of and for the benefit of Betty, with the result being that each of the four children ultimately have an equal interest in the trust property.

In addition to assisting with the sporting camp business, Betty took on the primary role of also caring for Roy Gardner, Sr. She used the income from the business to provide care for Roy Gardner, Sr., and pay her living expenses as well. This arrangement continued with the consent and approval of Roy, Molly, and Ruth through 2019.

In 2019, for reasons that are not entirely clear, the parties' relationship deteriorated to the point that it became clear that Roy and Molly could not work with Betty and Ruth. They began discussing untangling the real estate interests and Trust. Suffice it to say that the parties could not reach a mutually acceptable exit plan for their interests or the care of Roy Gardner, Sr., and his property interests.

In March of 2020, the parties, including Betty, met to discuss the Trust and the family issues. Molly and Roy, over Ruth's objection, appointed themselves as Trustee Managers. After the meeting, ostensibly pursuant to their authority as Trustee Managers, Roy and Molly took steps to close down the sporting camp business and oust Betty from any role in the business. This suit was commenced in late spring of 2020. After this matter had been pending for some time, Betty's personal property was moved to and stored in some of the sporting camp buildings.

## COMPLAINT I - DECLARATORY JUDGMENT

In Count 1 of Plaintiffs' Complaint, Plaintiffs are seeking a declaratory judgment regarding the beneficial ownership of Betty Gardner in the Trust assets, the meaning of

4

provisions of the Trust, and the right of the LLC to use the Trust real estate. The Court will address each in turn.

## A. INTEREST OF BETTY

As noted above, Betty Gardner has no stated beneficial interest in the Trust assets pursuant to the terms of the Trust. The court does find that Ruth agreed to hold and manage Betty's interest in the Trust property.

> "A constructive trust may be imposed to do equity and to prevent unjust enrichment when title to property is acquired by fraud, duress, or undue influence, or is acquired or retained in violation of a fiduciary duty." *Baizley v. Baizley*, 1999 ME 115, P 6, 734 A.2d 1117, 1118 (quotation marks and alteration omitted). Thus, a constructive trust may be imposed when "a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Id.* "A constructive trust is an equitable remedy imposed by the court regardless of the parties' intentions in order to prevent unjust enrichment." *Corey v. Corey*, 2002 ME 132, P 10, 803 A.2d 1014, 1017. In the context of a constructive trust, a fiduciary relationship exists when one party "has rights and duties that he is bound to exercise for the benefit of [another]." *Wood v. White*, 123 Me. 139, 143, 122 A. 177, 179 (1923) (quotation marks omitted)." *Cassidy v. Cassidy*, 2009 ME 105, P8, 982 A.2d 326, 329.

The court finds by clear and convincing evidence that a constructive trust was created by the fiduciary relationship formed between Ruth and Betty as it related to the Trust property. Ruth was allocated a 50% beneficial interest in the Trust property. It would be unjust to permit Ruth to retain the 25% interest that was intended for Betty.

5

## B. <u>MEANING OF TRUST PROVISION</u>

Plaintiffs contend that the provisions of the Trust set forth in paragraph 1.4 regarding Managing Trustee are ambiguous. In a declaratory judgment action pursuant to 14 M.R.S. §§5951-5963, "the allocation of the burden of proof . . . must be determined by reference to the substantive gravamen of the complaint. The party who asserts the affirmative of the controlling issues in the case, whether or not he is the nominal plaintiff in the action, bears the risk of non-persuasion." *Hodgdon v. Campbell*, 411 A.2d 667, 670-71 (Me. 1980). The controlling issues in this matter are whether the Defendants have violated the terms of the Trust by appointing themselves as Managing Trustees under a one-Trustee/one-vote reading of the Trust as opposed to a reading of the Trust that the Trustee's vote is weighted in accordance with that Trustee's beneficial interest in the Trust. Plaintiff asserts the affirmative of those controlling issues. Therefore, the burden of proof rests with the Plaintiff.

The court does not find the Trust in this regard to be ambiguous. The Trust is clear that by majority vote of the Trustees may appoint one or more of the Trustees to the managing Trustee. *Plaintiffs' Ex. 5 at ¶1.4*. The language referring to "one or more" Trustees clearly reflects a one-Trustee, one-vote dynamic. Therefore, the Court finds that the Defendants' action in appointing themselves as Trustee Managers did not violate the terms of the Trust.

6

## C. LLC'S USE OF THE TRUST PROPERTY
## COMPLAINT II - INJUNCTION

Pursuant to 14 M.R.S. §5963, "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration and no declaration shall prejudice the rights of persons not parties to the proceeding." "A person who is subject to service of process shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." *Me. R. Civ. P. 19.*

The dispute regarding the current operation of the sporting camps is not justiciable by the court due to the lack of an essential party. None of the present litigants or the Trust have any *present right* to use or occupy the real estate described in the instruments conveying an interest in real estate to the Trust. The property is all subject to a life estate in Roy Gardner, Sr., who is currently living in Fort Kent. Betty's claim regarding a declaration of the right of the LLC to run the sporting camps would be against the person or entity who has the *present* right to use and enjoyment of the property, Roy Gardner, Sr. As a life estate terminates upon the death of the life tenant, any determination related to the *term* for which the LLC has the right to run the sporting camps could well impact the rights of both the Trust and Roy Gardner, Sr.

7

It is for this same reason that Plaintiff's request for an injunction must be deferred. Any issue that the parties have related to the use of the real estate and personal property that comprises the sporting camp business is with Roy Gardner, Sr., at present and with the Trust for future times after his passing. Roy Gardner, Sr., is not and has not been a party to this action. He lives in Fort Kent and is therefore subject to service of process. *M.R.Civ.P. 19(a)*.

"A litigant's failure to join a necessary party does not result in a dismissal 'if that person can be made a party to the action. If joinder is feasible, the court must order it; the court has no discretion at this point because of the mandatory language of the rule.' 7 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1611, at 161-66 (1986) (discussing Fed. R. Civ. P. 19(a), which is substantially the same as M.R. Civ. P. 19(a))." *Nemon v. Summit Floors, Inc.*, 520 A.2d 1310, 1313 (Me. 1987).

Roy Gardner, Sr. must be added as a party in order for the Court to adjudicate Count 1 as it relates to the LLC's right, if any, to operate the sporting camp business, and Count 2 regarding the injunction. The Court defers ruling on this aspect of Count 1 and Count 2. Upon formal written request of Plaintiffs that they seek to proceed against Roy Gardner, Sr. as well, the Court will order joinder and reopen the evidence regarding these claims. In the event the Plaintiffs fail to so request to proceed against Roy Gardner, Sr. as well within fourteen (14) days from the docketing of this Judgment, this aspect of Count 1 and Count 2 will be **dismissed**.

## COMPLAINT III - BREACH OF FIDUCIARY DUTY

Plaintiffs contend that Defendants breached their fiduciary duty by way of the actions they took as Managing Trustees. As noted above, the court finds that the Defendants did not violate the terms of the trust by appointing themselves as Manager Trustees. However, the inquiry does not end there. The Plaintiffs raise issues with the manner in which they exercised what they believed to be their authority as Manager Trustees.

"Under Maine common law, the elements of a breach of fiduciary claim are (1) a fiduciary relationship between the plaintiff and another person, (2) a breach of the other person's fiduciary duty toward the plaintiff, and (3) damages incurred by the plaintiff proximately caused by the breach." *Meridian Med. Sys., LLC v. Epix Therapeutics, Inc.*, 2021 ME 24, P12, 250 A.3d 122, 127 (*citing, Steeves v. Bernstein, Shur, Sawyer & Nelson, P.C.*, 1998 ME 210, ¶ 10 n.8, 718 A.2d 186; *Moulton v. Moulton*, 1998 ME 31, ¶ 5, 707 A.2d 74; *Leighton v. Fleet Bank of Me.*, 634 A.2d 453, 457-58 (Me. 1993); *Ruebsamen v. Maddocks*, 340 A.2d 31, 35 (Me. 1975).

It is clear that the Defendants, in their role as Trustees or Manager Trustees had a fiduciary relationship with Ruth, at the very least. There was insufficient credible evidence for the court to find any other fiduciary relationship between the parties. The evidence reflected that the Defendants engaged in actions related to the sporting camp business that exceeded the authority that the Trust had over the property or business. Although they ostensibly took those actions as Trustee Managers, the Trust had no right

9

to present use of the property. To be legally justified, their actions could only be authorized by Roy Gardner, Sr.

Assuming arguendo, that there was a breach of their fiduciary duty, Plaintiffs would also have to show damage related to the breach. As it relates to the issue of damages, as noted above the Trust does not have any current possessory right to the real estate involved or to the income and profits related thereto. Any damage or detriment to the sporting camp business impacts Roy Gardner, Sr. He has exclusive right to possession and control of the real estate as the life tenant and there was no credible evidence that he has transferred his interest in the business to the Trust or to any of the parties. Although there was an informal agreement for the children to *assist* in the operation to provide funds for Roy Gardner, Sr., this does not equate to proof of a transfer of right, title, or interest in the business to any of the participants in this case.[2] Therefore, the court finds that the Plaintiffs have failed to establish the necessary elements to show a breach of fiduciary duty by the Defendants. Judgment is entered in favor of Defendants on Count III of Plaintiff's complaint.


## COMPLAINT IV – TERMINATION OF THE TRUST

The Settlors, Grantors, Co-Trustees, and named Beneficiaries of the Gardner Family Trust are Roy M. Gardner, Jr., Ruth A. Sheldon, and Molly Beth Pangburn. *Plaintiffs' Ex. 5; 18-B M.R.S. §103(14)("Settlor" means a person, including the testator, who creates or contributes property to a trust"*). Title 18-B M.R.S. § 412 applies to the Gardner

---

[2] There was no claim asserted for tortious interference with any business relationship.

Family Trust because the Plaintiffs filed their complaint after July 1, 2005. Section 412 is unambiguous; it permits modification of both administrative and dispositive trust terms or even termination "because of circumstances not anticipated by the settlor" if such modification will "further the purposes of the trust." *18-B M.R.S. § 412(1)*. Additionally, section 412 requires only that modification be "in accordance with the settlor's probable intention" "[t]o the extent practicable." *18-B M.R.S. § 412(1)*. The purpose of the Trust was to establish a vehicle for ownership and operation of the family sporting camp business for the equal benefit of the parties to this action. At the time of the hearing, the Trust did not yet have any present possessory interest in the sporting camp property, but the Trust was poised to manage the business at the conclusion of the life tenant's right of occupancy, income, and profits. In order to fulfil the purpose of the Trust, the Trustees would need to be able to work together and the property necessary to the business operations would need to be under their control.

In this matter, an integral piece of real estate necessary to the operation of the sporting camp business, the "lodge property," is owned solely by Molly. Additionally, despite many years of civil discourse and cooperation regarding the care of their parents and assisting in their parents' business, the parties have now exhibited a total inability to cooperate and outright hostility toward one another. This inability to cooperate was acknowledged and described by the parties in their testimony. The parties wish to be done with the Trust and to a large extent, with one another. The court finds that the Plaintiffs have shown that due to these unforeseen circumstances, the termination of the Trust is necessary and appropriate.

11

18-B M.R.S. §412(3) provides that "[u]pon termination of a trust under this section, the trustee shall distribute the trust property in a manner consistent with the purposes of the trust." Although the Trust does contain ambiguous and somewhat inconsistent terms related to termination and distribution of property, the Court finds that the evidence clearly shows the overarching goal of the Trust was to ultimately benefit the children of Maude and Roy Gardner, Sr., equally. *Compare, Plaintiffs' Ex. 5 at Art. II; Art. III at 3.6 and 3.7; Art. V at 5.2; and Art. VI at 6.1.* Therefore, the assets of the Trust must be distributed 25% to Roy Gardner, Jr., 25% to Molly Pangburn, and 50% to Ruth Sheldon. The court has found that Ruth holds Betty's 25% beneficial interest of the total Trust corpus in a constructive trust for her.

The evidence was insufficient for the Court to order a particular distribution of assets in kind to satisfy the requirement that the assets of the Trust be distributed 25% to Roy Gardner, Jr., 25% to Molly Pangburn, and 50% to Ruth Sheldon (of which 25% of the total Trust corpus remain in a constructive trust for the benefit of Betty Gardner).

## ORDER OF TERMINATION

In the event the parties are unable to agree in writing upon a particular distribution of Trust assets in kind in accordance with the order herein within sixty (60) days from the docketing of this Judgment, the Trustees shall cause all assets of the Trust to be sold at an auction sale to the highest bidder, with the sale advertised and conducted in a commercially reasonable manner. Following the sale of the assets, after payment of costs and expenses of the sale, the proceeds shall be distributed 25% to Roy Gardner, Jr., 25%

12

to Molly Pangburn, and 50% to Ruth Sheldon (of which 25%of the total net proceeds remain in a constructive trust for the benefit of Betty Gardner). Ruth Sheldon is further ordered to thereafter distribute ½ of the proceeds she receives to Betty Gardner, ultimately resulting in a ¼ share of the Trust property to each child of Maude and Roy Gardner, Sr.

## COUNTERCLAIM I - ACCOUNTING

Defendants contend that they are entitled to an accounting from Betty as to her care of and management of the affairs of Roy Gardner, Sr. *See, Horton & McGehee, Maine Civil Remedies § 8-1 (1988)*. An action for an accounting is "[a]n action for equitable relief against a person in a fiduciary relationship to recover profits taken in breach of the relationship. . . . "[I]t is a restitutionary remedy based upon avoiding unjust enrichment . . . [that] reaches monies owed by a fiduciary or other wrongdoer, including profits produced by property which in equity and good conscience belonged to the plaintiff." *Oceanic Inn, Inc. v. Sloan's Cove, LLC*, 2016 ME 34, P38, 133 A.3d 1021, 1032 (citing, *Black's Law Dictionary 22 (9th ed. 2009)* (quoting Dan B. Dobbs, *Law of Remedies* § 4.3(5), at 408 (2d ed. 1993)). In order to be entitled to an accounting, a claimant must show a fiduciary relationship between the parties. *Id*. In order to show that a fiduciary relationship exists, the party asserting the same must show "(1) the actual placing of trust and confidence in fact by one party in another, and (2) a great disparity of position and influence between the parties at issue." *Bryan R.*, 1999 ME 144, ¶ 19, 738 A.2d. 839 (quotation marks omitted)." *Ramsey v. Baxter Title Co.*, 2012 ME 113, P7, 54 A.3d 710, 712 ("We will not impose fiduciary duties based on arms-length business relationships alone").

The care of Roy Gardner, Sr. and the management of his funds may result in a fiduciary duty that Betty owed to *him*. Defendants have failed to prove sufficient facts to

13

show that a fiduciary relationship existed between the Defendants and Betty. Judgment is entered in favor of Plaintiff/Counterclaim Defendant Betty Gardner on Count 1 of the counterclaim.

## COUNTERCLAIM II - ASSAULT

Counterclaim Plaintiff, Roy Gardner, Jr. has requested the dismissal of his claim for assault against Betty. His request is granted, Count II of the Counterclaim is hereby dismissed with prejudice and without costs to either party.

## CONVERSION CLAIM BY BETTY

During the trial, Betty sought to advance a claim for conversion related to her personal property. This was not included in the pleadings and Betty requests the Court permit an amendment to the pleadings to conform to the evidence pursuant to M.R.CIV.P. 15(b). The parties thoroughly provided testimony on the issue of the personal property. Therefore, the court finds that the matter is squarely before the court by the implied consent of the parties. That request is granted, and the court will analyze the evidence on Betty's claim of conversion.

To prove a claim of conversion, a plaintiff must prove, by a preponderance of the evidence, the following facts:

1. The defendants took possession of plaintiff's property; and
2. The plaintiff has a property interest in the property—that is, that Plaintiff owned the property or had another interest in the property that entitled plaintiff to possess the property to the exclusion of the defendants; and
3. The plaintiff had the right to possess the property at the time it was taken; and

14

4. The plaintiff demanded that the property be returned to plaintiff, but the defendants refused to return the property.

*See, Estate of Barron v. Shapiro & Morley, LLC*, 2017 ME 51, P14, 157 A.3d 769, 773.

Betty has proven that her personal property was moved by the Defendants or others on their behalf to the 4 unit building in August of 2021. Betty's personal property is still on the family property, and it has been available for her retrieval. She has failed to produce sufficient credible evidence for the court to find that she demanded the return of the property and the Defendants refused to return her property. Betty remarkably took no action to request the retrieval her items or assert her right to collect the property. The court finds the evidence shows she *elected* not do so, not because Defendants refused to return the items to her. As such, on Betty's claim for conversion, Judgment is hereby entered for Defendants.

In summary, judgment is entered as follows:

**Complaint Count 1** – Declaratory Judgment – Judgment for Plaintiffs as set forth above regarding the beneficial interest of Betty; Judgment for Defendants as set forth above on the meaning of the Manager Trustee appointment; and as to the LLC's right to use the property, decision deferred.

**Complaint Count 2** – Injunction – Deferred.

**Complaint Count 3** – Breach of Fiduciary Duty – Judgment for Defendants.

**Complaint Count 4** – Termination of Trust – Judgment for Plaintiffs.

**Added Count 5** – Conversion – Judgment for Defendants.

15

**Counterclaim Count 1** – Accounting – Judgment for Plaintiffs/Counterclaim Defendants

**Counterclaim Count 2** – Assault – Withdrawn by Defendant and dismissed without costs.

The Clerk is directed to enter this Judgment upon the civil docket by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

Dated: 3/16/2022

_____
Maine Superior Court

ENTERED ON THE DOCKET 3·16·22

16