Nancy E. GAULIN and Kenneth
W. Jones

v.

Herbert A. JONES.

Supreme Judicial Court of Maine.

Argued June 18, 1984.

Decided Sept. 4, 1984.

Cloutier, Barrett, Cloutier & Conley, Daniel P. Barrett (orally), Arthur A. Peabody, Portland, for plaintiffs.

Perkins, Thompson, Hinckley & Keddy, Thomas B. Wheatley (orally), John R. Opperman, Dennett H. Buettner, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN and GLASSMAN, JJ.

WATHEN, Justice.

Defendant Herbert A. Jones appeals from an order of the Superior Court (Cumberland County) imposing a constructive trust for the benefit of defendant's sister and brother, plaintiffs Nancy E. Gaulin and Kenneth W. Jones, on a parcel of real estate. The court directed the sale of the property with distribution of the proceeds in three equal shares. Defendant's principal contention on appeal is that the evidence is insufficient as a matter of law to support the imposition of a constructive trust. We sustain the appeal.

The following relevant facts are not in dispute: Plaintiffs and defendant are three of the four living children of the late Morrell W. Jones who, in early 1978, owned a certain parcel of real estate with a summer house on Peaks Island in Portland. The father was ill at the time, and several of his children felt that title to the property should be transferred in order to protect it from being sold to cover medical and nursing home expenses.[1] The remaining sister, who is not a party to this action, discussed the possibility with both her father and the defendant of having title transferred to the defendant because she believed her father wished him to have it. The defendant resisted the idea at first and expressed concern that such a conveyance would be unfair to the plaintiffs.[2] Defendant finally acquiesced, however, and on February 2, 1978, his father executed a deed transferring the property to him as a gift.

After learning of this transaction, plaintiff Nancy Gaulin immediately wrote to her father, indicating that she was upset that the property had been conveyed to the defendant alone and not to all three children jointly. She suggested that her father have his attorney prepare a "corrected" deed to include both plaintiffs as grantees, or have the defendant reconvey the property to all three parties. In his letter of

---

1. The record does not reflect that any fraud was actually perpetrated on the state or any creditor as a result of this transfer.

2. It was apparently understood in the family that the other sister would have no interest in this property since she had already been given the grandparents' house.

reply, her father merely reiterated that there had been an urgent need to transfer the property to avoid "the state ... tak[ing] it over." He expressed his wish that both plaintiffs would "get [their] share of anything [he had] left", and admonished them to "trust" the defendant. The father made no attempt to implement Nancy's suggestions, nor did he ever indicate an intent to alter the disposition of his property in any way before his death one and one half years later, on June 12, 1979.

Defendant attempted, shortly after the transfer, to explain the circumstances to Nancy and indicated a willingness to discuss the matter with the entire family. Such a meeting never transpired, however, and no further discussions occurred prior to the father's death. Later, when defendant called Nancy to discuss burial arrangements, she again suggested a meeting to discuss "straightening out" the real estate situation to provide for the plaintiffs' shares. Defendant replied that the house was his. Although he initially indicated that he would purchase the plaintiffs' shares, he soon retracted that offer and refused to give them anything.

Plaintiffs filed a complaint on December 27, 1979, alleging that defendant had failed to recognize their interest in the property contrary to their father's intention. They sought partition of the property by sale with division of the proceeds in equal shares. Defendant moved to dismiss for failure to state a claim, but withdrew the motion after plaintiffs amended their complaint to include allegations of fraud and breach of fiduciary duty. At the conclusion of a jury waived trial, the presiding justice ruled in favor of the plaintiffs, imposing a constructive trust on the property for the benefit of all three parties. In his findings of fact, the presiding justice concluded: (a) that the father had wished plaintiffs to receive the equivalent value of a one-third interest in the real estate, (b) that this was known to the defendant, and (c) that the father would not have conveyed the property to defendant as sole grantee

had he not been assured that defendant would later compensate plaintiffs for the cash value of their shares.

Judgment was entered ordering the appointment of a special master to have the property appraised and to give defendant first option to purchase it for the appraised value. The court developed a formula for allocating the proceeds from the sale of the real estate, factoring in defendant's expenditures for maintenance and taxes as well as the estimated value of his use and occupancy of the property in the intervening years. From this judgment, defendant appeals.

■ Defendant's appeal raises questions of law concerning the evidentiary requirements for the use of a constructive trust as an equitable remedy. We have previously held that a constructive trust may be imposed to do equity and to prevent unjust enrichment when title to property is acquired by fraud, duress, or undue influence, or is acquired or retained in violation of a fiduciary duty. *Chandler v. Dubey*, 325 A.2d 6, 8 (Me.1974). Such relief is appropriate "where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Restatement of Restitution* § 160 (1937). Since the parties have not alleged duress or undue influence, the only issue in the present case is whether the facts support a finding of fraud—either actual or constructive—or breach of a fiduciary relationship.

■ A finding of actual fraud would require proof that defendant had made a false representation of material fact in order to induce his father to execute the deed. *See Letellier v. Small*, 400 A.2d 371, 376 (Me.1979). No such showing was made by plaintiffs in the instant case. Alternatively, fraud in equity or constructive fraud may be found where it can be demonstrated that one party has obtained some benefit from the other through undue influence or breach of a fiduciary or confidential relation. *Gerrish v. Chambers*, 135 Me.

70, 74, 189 A. 187, 189 (1937). Constructive fraud involves a situation in which the transferor is induced to act, not by any misrepresentation of material fact, but through reliance on a relationship of trust which may be founded on moral, social, or personal, as well as legal duties. *Eldridge v. May*, 129 Me. 112, 116, 150 A. 378, 379 (1930).

Most of our past decisions upholding a constructive trust have involved relationships in which one party was heavily dependent upon and placed great confidence in the other, thereby giving rise to a presumption of undue influence tainting any transaction that benefitted the superior party. *See, e.g., Small v. Nelson*, 137 Me. 178, 16 A.2d 473 (1940); *Gerrish v. Chambers*, 135 Me. 70, 189 A. 187 (1937); *Eldridge v. May*, 129 Me. 112, 150 A. 378 (1930); *see also Reubsamen v. Maddocks*, 340 A.2d 31, 35 (Me.1975) (essential elements of relation defined as actual placing of trust and confidence by one party in another, and great disparity of position and influence between parties). In the present case, however, the absence of any evidence that the father was mentally incapacitated or in any way dependent on defendant at the time of the transaction, coupled with indications that defendant actually resisted his father's efforts to deed him the property, renders such decisions inapposite.

■ The alternative basis for a finding of constructive fraud exists where, in making the conveyance, the grantor trusts the grantee to hold the property for the benefit of the grantor or a third party. In such situations, the grantee abuses the resulting fiduciary relationship if he fails to perform, and he will then be treated by the court as a constructive trustee for the beneficiary.[3] A constructive trust may be imposed on this basis only where there is clear and convincing evidence of an agreement between the grantor and grantee to benefit another party. *Sacre v. Sacre*, 143 Me. 80, 94, 55 A.2d 592, 599 (1947); *see Horner v. Flynn*, 334 A.2d 194, 200 (Me.1975) (clear and convincing evidence required where oral testimony relied on to contradict terms of written instrument).

■ In the case at bar, the presiding justice inferred the existence of an agreement, or "understanding", from the correspondence and oral statements made by defendant and his father to other individuals after title to the property had already been transferred outright to the defendant. In contrast to previous cases, *see supra* note 3, this record reveals no evidence of any discussions between defendant and his father, either before or after the deed was executed, concerning compensation of plaintiffs for their claimed shares of the property. Indeed, defendant testified that no such discussions had ever taken place. Without proof of a promise or agreement, neither the father's ambiguous comments after the transfer expressing his wish, desire or expectation that plaintiffs would somehow get their share, nor defendant's alleged "unconscious sense" of fairness toward his siblings, provides an adequate basis for imposing a constructive trust. The presiding justice erred as a matter of law in entering judgment for the plaintiffs on this record, and, therefore, we must sustain the appeal.

---

**3.** *See, e.g., Androscoggin Bank v. Tracy*, 115 Me. 433, 439, 99 A. 257 (1916) (conveyance of property on the faith of grantee's promise to reconvey it to the grantor's heirs in her will gave rise to a constructive trust "binding on her conscience"); *Gilpatrick v. Glidden*, 81 Me. 137, 16 A. 464 (1888) (trust imposed in favor of husband's heirs where he originally had intended to devise property to them but was persuaded instead to devise it to his wife upon her assurances that she would use it only during her lifetime and leave the remainder to his heirs).

*See also Sacre v. Sacre*, 143 Me. 80, 55 A.2d 592 (1947) (son violated trust and confidence reposed in him when he refused to reconvey property to father according to parol promise); *Wood v. White*, 123 Me. 139, 122 A. 177 (1923) (father-in-law abused confidential relationship by refusing to reconvey property to son-in-law according to oral agreement at time of purchase); and cases cited in 4 G. Palmer, *The Law of Restitution* § 19.3 at 122–23 n. 64 (1978) and 1 Scott, *Trusts* § 45.2 at 353 n. 3 (3rd ed. 1967).

The entry must be:
Judgment reversed.

All concurring.