1997 ME 212

**ESTATE OF Mary E. CAMPBELL.**

Supreme Judicial Court of Maine.

Argued Oct. 8, 1997.
Decided Nov. 4, 1997.

■■■■■■■■■■■■■■■■■■■■■■■■■

Edward J. Titcomb (orally), Titcomb, Marass, Flaherty & Knight, Sanford, for appellant.

Jeffrey W. Jones (orally), Jones & Warren, P.A., Scarborough, for appellee.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

DANA, Justice.

[¶ 1] John Campbell, a son of Mary Campbell, appeals from the judgment of the York County Probate Court (*Nadeau, J.*) ordering him to hold two parcels of real estate in a constructive trust for the benefit of Mary's estate. John contends that the court erred by finding that he abused a fiduciary or confidential relationship so as to give rise to a constructive trust and maintains that he owns one of the two parcels outright based on a deed signed by the then owner after his mother's death. John's brother, Joseph Campbell, the personal representative of Mary's estate, cross-appeals from that part of the Probate Court's amended decision that found no constructive fraud. Because the evidence supports the Probate Court's finding of an abuse of a confidential relationship, we affirm the judgment.

[¶ 2] In 1987 Mary transferred her interest in two cottage properties located in York to her son, John. At the time of the conveyances, Mary was 85 years old, in failing health, and living in a nursing care facility in Massachusetts. Because Mary's liquid assets were almost depleted, John made inquiries of Massachusetts officials regarding how Mary could qualify for Medicaid assistance. On the advice of Massachusetts Medicaid authorities and his own attorney, John arranged for Mary to transfer her two Maine cottages into his name, thereby removing them from the assets considered for Mary's Medicaid eligibility. Although John had undertaken the responsibility of making arrangements for Mary's care with the consent of his siblings, he did not inform any of them about these transfers until after their mother's death.

[¶ 3] Mary died intestate in 1990, and shortly thereafter a dispute arose among her children over the proper disposition of the two York properties. Joseph was appointed personal representative of his mother's estate and filed a complaint against John seeking a constructive trust over the York properties for the benefit of the estate on the grounds of breach of a fiduciary duty, fraud, misrepresentation, and undue influence. Following a testimonial hearing in March 1994, the York County Probate Court (*Brooks, J*), relying on the Improvident Transfers of Title Act, 33 M.R.S.A. §§ 1021–25 (Supp.1996), imposed a constructive trust on both properties. John appealed, and, without deciding whether a cause of action under the Act survives the death of the transferor, we vacated the judgment because the Act applies only to transfers made after August 4, 1988 and the conveyances at issue here occurred in 1987. *Estate of Campbell,* 651 A.2d 382, 384 (Me.1994).

[¶ 4] On remand, and after further hearing, the court again declared that John must hold the properties in a constructive trust for the estate of Mary. The court found for Joseph on the abuse of the confidential relationship count and the constructive fraud count and found for John on the misrepresentation and undue influence counts. After John moved to alter or amend the judgment pursuant to M.R. Prob. P. 59, a newly elected probate judge (*Nadeau, J.*) vacated the prior judge's finding supporting the constructive fraud count. The court upheld the imposition of a constructive trust, however, finding sufficient evidence of John's abuse of a confidential relationship. This appeal and cross-appeal followed.[1]

■■■■ [¶ 5] "[A] constructive trust may be imposed to do equity and to prevent unjust

---

1. Neither party appeals from the court's findings in John's favor on the misrepresentation and undue influence counts.

enrichment when title to property is acquired by fraud, duress, or undue influence, or is acquired or retained in violation of a fiduciary duty." *Gaulin v. Jones,* 481 A.2d 166, 168 (Me.1984) (citing *Chandler v. Dubey,* 325 A.2d 6, 8 (Me.1974)). The modern rule, unlike the traditional view, does not require a party seeking a constructive trust to show affirmative wrongdoing. *See* Horton & McGehee, *Maine Civil Remedies* § 9–3, at 221 (2d ed.1996). "[T]he constructive trust arises by operation of equity without regard to the parties' intentions. Its objective is to prevent unjust enrichment." *Id.* § 9–2, at 220.

[¶ 6] The existence of a confidential relationship is a question of fact. *Ruebsamen v. Maddocks,* 340 A.2d 31, 35 (Me.1975). Issues of fact are reviewed for clear error. M.R. Civ. P. 52(a); *VanVoorhees v. Dodge,* 679 A.2d 1077, 1080 (Me.1996). "A trial court's factual finding is 'clearly erroneous' if there is no competent evidence in the record to support it." *Id.*

[¶ 7] John contends that the court committed an error of law in holding that he retained title to the York properties in violation of a fiduciary duty. John, relying on *Gaulin v. Jones,* 481 A.2d 166 (Me.1984), argues that no constructive trust may be imposed in this case without clear and convincing evidence of an agreement between Mary and John that John would hold the property for the benefit of the other family members. Joseph maintains that although such a standard of proof is required to show constructive fraud under some circumstances, the court's finding of a breach of a fiduciary or confidential relationship does not require such a showing.

[¶ 8] Although in *Gaulin* we spoke in terms of a "resulting fiduciary relationship" arising out of an agreement by one party to hold property for another, the term was used in that case in the context of describing the elements of constructive fraud. *Gaulin,* 481 A.2d at 169. The elements of a claim for a constructive trust on the independent basis of an abuse of a confidential relationship are found in *Ruebsamen v. Maddocks,* 340 A.2d 31, 35 (Me.1975). In *Ruebsamen,* we established the procedural steps necessary before imposing a constructive trust based on an abuse of a fiduciary or confidential relationship: The party seeking the imposition of the trust must first establish by a preponderance of the evidence the existence of a confidential relationship between the grantor and the grantee. *Id.* at 34.

The salient elements of a confidential relation are the actual placing of trust and confidence in fact by one party in another and a great disparity of position and influence between the parties to the relation. That the parties are related by blood or marriage may lead a court to find that a confidential relation exists, where there is evidence as to trusting and where the blood or family relationship is in a close degree so that the imposition of great trust and the letting down of all guards and bars is natural.

*Id.* at 35. The burden then shifts to the benefited party to show the fairness of the transaction. *Id.* at 36–37.

[¶ 9] The court was justified in finding the following facts regarding the existence of a confidential relationship and its abuse: At the time of the 1987 conveyances Mary was 85 years old and in failing health. During the year prior to the conveyances John was responsible for Mary's finances, including approximately $26,000 of Mary's savings, her Social Security, and her husband's pension of $190 a month. The plan to transfer title of the two properties from Mary to John was initiated by John, who proceeded to make all of the arrangements for carrying out the plan. John informed his mother that by transferring the properties, the cottages would remain in the family and be available to pay bills at the nursing home. John did not inform his siblings of the transfer of the properties for several years and acted in a manner consistent with the fact that he was holding the properties for the family; for example, even after his mother's death he accepted contributions from his siblings toward the upkeep of the cottages. He testified that it was his intention to hold the properties for the family and that he changed his mind only when a conflict developed between him and his siblings. This evidence is more than sufficient to support the court's finding that a confidential relationship exist-

ed between John and his mother and that the confidential relationship was abused.

[¶ 10] In an effort to prove the fairness of the transactions, John contends that the conveyances were supported by good and adequate consideration and argues that the court erred in finding that he would be unjustly enriched by retaining the properties. Before asking his mother to sign over the properties to him, John hired an appraiser who valued the "rental cottage" at $52,500 and the "family cottage" at $49,500. He then convinced the Massachusetts Medicaid authorities that the transfers were not fraudulent by showing consideration for the rental cottage of $62,000 worth of goods and services that he claimed he advanced to maintain the property over the previous year and by signing a promissory note to his mother for $49,500 for the family cottage.

[¶ 11] The court, however, found that John's appraisals of the properties were not trustworthy because of known market conditions and his listing of the rental property at a price well over twice the appraised value only three years after the appraisal. The court also did not accept John's testimony regarding the value of the goods and services he claimed constituted valuable consideration for the rental property.

[¶ 12] Even assuming that it erred in not accepting the appraisals,[2] the court's finding that John would be unjustly enriched if he were allowed to retain the properties was not clearly erroneous. The court found that John's testimony regarding his expenditures for the rental cottage was "not believable."[3] John also testified that he discontinued making payments on the promissory note following Mary's death. These findings support the conclusion that John would be unjustly enriched by his retention of the properties.

[¶ 13] John also argues that he has outright ownership of the rental cottage based on a deed given to him by his cousin, Arlene McLaughlin Bevilacqua. The deed that conveyed the rental cottage to Mary in 1951 was a Massachusetts short form deed that contained no words of inheritance. Prior to 1968, when Maine enacted the Short Forms Deeds Act, 33 M.R.S.A. § 761–775 (1988 & Supp.1996), Maine common law required that a deed use the technical word "heirs" to create an interest of perpetual duration in land by deed to an individual. *See Hall v. Hall,* 106 Me. 389, 391, 76 A. 705, 706 (1910); *Brown v. Dickey,* 106 Me. 97, 103, 75 A. 382, 385 (1909). Without this word, the deed conveyed only a life estate to the grantee, no matter how plainly the deed expressed an interest of perpetual duration. *O'Neill v. Williams,* 527 A.2d 322, 324 (Me.1987). John contends that because the deed to Mary contained no words of inheritance, Mary possessed only a life estate and the rights to the remainder were in the grantor, so that when Mary died in 1990 the property reverted to Bevilacqua, the only heir of the original grantor. According to John, Bevilacqua's deed granted him clear and complete title to the rental cottage, and the rental cottage cannot be considered part of Mary's estate.

[¶ 14] Assuming, without deciding, that Mary had only a life estate in the rental property, we are not persuaded that the deed from Bevilacqua to John should defeat the imposition of a constructive trust. John's fiduciary obligation arose out of his confidential relationship with Mary during her life, and we are presented with no compelling argument that the obligation should not continue for the benefit of her estate at her death. John's procurement of the curative deed occurred while he was subject to this obligation and has no effect on the equity power of the court to impose a constructive trust in these circumstances.[4]

---

2. Joseph did not present any appraisals of his own regarding the value of the properties.

3. John testified that he supplied $62,000 worth of goods and services toward upkeep of the rental cottage in the year prior to the conveyance, but expended only $30,000 over the five years prior to the hearing. He also testified that he included the money expended on his mother's nursing care in the $62,000 figure, a significant amount of which came from his mother's own income and savings over which he had control.

4. Because we affirm the imposition of a constructive trust on the basis of a breach of confidential relationship, we do not address Joseph's cross-appeal on the issue of constructive fraud.