STATE OF MAINE             SUPERIOR COURT
PISCATAQUIS, SS           CIVIL ACTION
DOCKET NO. DOVSC-CV-20-02

JANICE BJORKLAND, )
    Plaintiff, )
                            )
                            )           ORDER
v. )
                            )
                            )
AMANDA BJORKLAND, )
    Defendant. )

Trial of this case was completed and closing arguments submitted by August 19, 2022. Nolan Tanous, Esq. and his client the plaintiff were present for trial, as were Benjamin Cabot, Esq. and his client, the defendant. This case concerns the plaintiff's multi-count complaint addressing issues related to parties' interest concerning in a camp on Ambejejus Lake.

FACTS

The plaintiff and her then husband, Mark, bought the camp on August 29, 2000. Amanda is their daughter. They bought the structure and outbuildings only (not the land) for $83,000 and leased the land upon which the camp was situated. The transaction was owner financed and the amount borrowed was paid off within three years of the sale. Janice and Mark were divorced in 2004 but they continued to co-own the camp and share expenses amidst Janice's complaint that Mark did not promptly pay his share of the expenses. Use of the camp in the ensuing years brought great conflict. Mark had a girlfriend and many family members with whom he wanted to enjoy the camp. Janice was resistant to splitting the time that each could be at the camp and insisted on being present when Mark and guests were present. This caused a tremendous amount conflict, stress, and unhappiness because Janice disliked Mark, his family, and, of course, the

1

PISCATAQUIS JUD CTR
OCT 18 '22 AM 8:08

girlfriend. Eventually Mark gave up and wanted to release his interest in the camp, but he and Janice were unable to reach an agreement until Janice devised a plan to convey the camp to Amanda. Amanda, 22 years of age at the time, had no interest in having the camp conveyed to her, but considered the proposal only after Janice and Mark agreed that they would pay all expenses related to the camp. Amanda eventually acquiesced and on February 9, 2010, Janice and Mark conveyed the camp to her. Based on the testimony at trial, the Court concludes the camp was conveyed in an attempt to involve Amanda in improving the parents' relationship issues and to preserve and protect the asset. Although Janice testified that Amanda agreed that Janice would have a life estate in the camp, Amanda and Mark disagreed and tsetified that there was no mention of a life estate at the time of the conveyance. The Court finds that although Janice thought she would be able to use the camp as she pleased for the remainder of her life, there was in fact no life estate created.

Following this transaction, the three were going to continue to use the camp, and the parents were going to pay all related expenses. In fact, Amanda used the camp infrequently because a period of continued disfunction followed. Amanda, now the owner, was in the unenviable position of refereeing her parents' disputes and trying to get her mother to understand there would be no peace if she were present when her former husband and his invitees were present. Amanda even enacted rules of behavior at camp that her parents violated constantly. The biggest problem was trying to get Janice to moderate her behavior, which she intransigently refused to do. In 2015, Mark announced he would no longer use the camp and pay expenses. At the same time, the lessor wanted to sell the property upon which the camp was situated. Neither parent could borrow the $102,000 sales price, but Janice persuaded Amanda to borrow the money and buy the land, which she did, with her mother's nonfinancial assistance. Janice then

2

decided they would air B&B the camp and, pursuant to the established pattern, Amanda acquiesced.

The agreement between the two involved renting the property and paying the mortgage and related expenses out of the proceeds. One of the reasons Amanda agreed was that she still did not want to use her separate money to pay for the camp. They began renting the camp in 2016 and rental receipts increased each year, reaching almost $32,000 in 2019. Janice managed the use of the rental property and deposited receipts into a bank account jointly owned with Amanda and paid expenses out of the same account. In the late summer of 2019, the tenuous relationship between the two broke and Amanda no longer interacted with her mother. Amanda withdrew $8,000 from the joint account to make mortgage payments in the future, and Janice continued to occupy the property. Even when tenants were present, Janice had resided in a trailer on the property and after this split she could reside in either the camp or trailer. Although in her testimony she indicated she rented the property sparingly after 2019, she had to admit on cross that she actually rented it fairly frequently, but there is little accounting information concerning the post 2019 rentals. Amanda has continued to pay the mortgage to the present day. Amanda filed a forcible and detainer action to regain occupation of the camp, but that proceeding has been stayed pending a resolution of this case.

CLAIMS

Constructive Trust

"A constructive trust may be imposed to do equity and to prevent unjust enrichment when title to property is acquired by fraud, duress, or undue influence, or is acquired or retained in violation of a fiduciary duty." *Estate of Campbell,* 1997 ME 212, 704 A.2d 329, 331. The

3

situation presented here is in many ways the opposite of the scenario commonly resulting in the imposition of a constructive trust. Here, the plaintiff aggressively persuaded her daughter to take title to the camp itself and later, to purchase the land upon which the camp is situated. Amanda only consented when Janice guaranteed that she, Amanda, would in fact bear no related expense. Later the on-line rental plan was devised to pay for the expenses related to the camp. That eventually failed because of the "toxic relationship," in Amanda's words, between mother and daughter. It is the Court's opinion that Janice's not to be denied personality trait in large part led to the failure of the rental business. Clearly, Amanda did not use fraud, duress, or undue influence to acquire title to the property. Additionally, even though Janice thought she would be able to use the property as her own on the future, there was no agreement giving her a life estate and the property was conveyed to Amanda without such an agreement. Finally, there is no fiduciary duty here. The existence of a fiduciary duty is dependent upon proof of the existence of a confidential relationship and the elements of a confidential relationship include the actual placing of trust and confidence by a party in another and a great disparity of position and influence between the parties to the relation. *Ruebsamen v. Maddocks*, 340 A.2d 31, 35 (Me. 1975). Those features are not present here.


Partnership and Breach

Janice and Mark Bjorkland transferred title to their camp to Amanda for reasons not associated with forming a partnership. After Mark bowed out of involvement with the camp, Amanda, at the urging of her mother, borrowed money to but the land upon which the camp was situated, and at that time arrived at a plan to rent the camp to others, in part, in order to raise money for mortgage payments. From the beginning, Amanda had cooperated with her parents'

4

plan to dispose of the camp by conveying it to her, provided it did not cost her any money. Whether a partnership agreement controlled by 31 M.R.S. § 1022 existed or not, there was no express term of years during which the partnership was to exist, and either party could dissociate by notifying the partnership of the partner's express will to withdraw as a partner. 31 M.R.S. §1061(1). What is left, then, is a wind up the partnership business which, in essence, is being done here. First, it must be acknowledged that throughout the period of time from 2105 to present, the camp has remained Amanda's property. In addition to having the mortgage paid down and the property improved (to be addressed below), the only financial benefit to Amanda has been the $8,000 that she took form the joint account. From that point on, Janice has had access to the property and has retained rental proceeds, while Amanda has been excluded. From 2015 to the partnership's end, all rental proceeds went into a joint account controlled by Janice, and, with the exception of this $8,000, she has retained all of the money in the account, using it to meet rental camp expenses and retaining some for her benefit, and since 2019, all done while having exclusive use and control of the property. She is entitled to nothing in the wind up of this partnership.

Unjust Enrichment

The elements of unjust enrichment are (1) a benefit conferred on defendant by plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention of the benefit in circumstances that make it inequitable for the defendant to retain the benefit without payment for the value of the benefit conferred. *See Me. Eye Care Assocs., P.A. v. Gorman,* 2008 ME 36, ¶ 17. The measure of damages is the value of the benefit received. The court finds that this doctrine applies to the reduction in mortgage principal and camp

5

improvement expenses related to the period of time in which the rental business was operational.[1] The court confines the award to these categories because Janice controlled the joint account and had control over the surplus each year. Other than the two above categories of enrichment, money derived from renting the camp was shared equally or was kept by Janice or used for proper expenses.

To arrive at a mortgage paydown, the court notes that approximately ½ of each payment went to principal. *See* Joint Ex. 11, 12. Using pl. ex. 2, 4, 6, 8, and 10, the total mortgage payments were $42,585 prior to the breakup, plus the $8,000 Amanda took to make future mortgage payments for a total of $50,585, with ½ or $ 25,293 attributable to principal. Janice's ½ would be $12,647. The Court also finds that pl. ex.12 accurately demonstrates that $19,293 was spent on camp improvements and ½ of that amount is $9647. The total that defendant must pay to the plaintiff is $22,294.


Conversion, Injunctive Relief and Tortious Interference

The Plaintiff does not prevail on conversion because any mortgage proceeds were spent by agreement, with the exception of $8,000 retained by Amanda, to make mortgage payments while Janice enjoyed exclusive use of the property. This amount has been factored into the Court's decision in the entirety of the claims. Plaintiff does not prevail on the injunctive relief claim, having lost the constructive trust claim. Plaintiff does prevail on the claim for tortious interference with advantage business relationship because of insufficient evidence that defendant

---

[1] This is not inconsistent with the Court's constructive trust findings because a constructive trust was not imposed because of the absence of fraud, duress, undue influence, and confidential relationship – not because there was no unjust enrichment.

6

made such tortious statements, and her right to partnership income terminated upon the dissolution of the partnership.

### II. COUNTERCLAIMS

The Court finds for the counterclaim defendant on all counterclaims. Counts I, II, and III, which address Janice's allegedly unlawful occupation of the camp property are not successful because Amanda eventually acquiesced in her occupation. On counterclaim IV, Amanda has failed to prove that Janice made false statements as alleged. Counts V and VI fail because the evidence of the severity of the emotional distressed caused is lacking. Count VII, conversion, fails either because of insufficient evidence of personal property converted, or if the count applies to the camp itself, for the reasons expressed with regard to counts I, II, and III. Counterclaim VIII fails, the Court having found already found that Amanda was unjustly enriched, precluding Amanda's claim as counterclaim plaintiff.

The Entry is:

Verdict for the defendant on Counts I, II, III, IV, V, and VII on plaintiff's complaint and for the plaintiff in the amount of $22,294 on Count VI.

Verdict for the counterclaim defendant on all counterclaims.

10/11/22
Dated

William Anderson, Justice
Maine Superior Court

7